O'SULLIVAN *v.* O'SULLIVAN.

PARTNERSHIP—ACCOUNTING—EVIDENCE—SUFFICIENCY.
> In a suit to establish a partnership and for an accounting, a decree in favor of plaintiff *held*, justified by the record.

Appeal from Macomb; Reid (Neil E.), J.    Submitted January 13, 1928.    (Docket No. 56.)    Decided June 4, 1928.

Bill by James O'Sullivan against Alfred J. O'Sullivan for a partnership accounting.    From a decree for plaintiff, defendant appeals.    Affirmed.

*Lungerhausen, Weeks, Lungerhausen & Neale* (*Avery, Covington & Tappan,* of counsel), for plaintiff.

*Walsh, Walsh & O'Sullivan,* for defendant.

FELLOWS, J.    The parties to this suit are brothers. Before the transaction here involved they had been associated together with one Woodrow as partners in the construction of a sewer in Port Huron; the contract in that instance having been awarded to plaintiff and Woodrow but was carried out by the three. It is plaintiff's claim that he and defendant were in partnership in constructing a section of another sewer known as the Nine-Mile Halfway drain, and this bill is filed for an accounting of such partnership.    It is practically without dispute that general contracting in Port Huron had reached a point where it was not very profitable, and it is practically without dispute that defendant suggested both to plaintiff and another brother that they get out of the general contracting

Partnership, 30 Cyc. pp. 413, 737.

business and get into the bigger and more profitable business of contracting for sewer and paving construction, and that it was suggested that they form a partnership for that purpose. It is plaintiff's claim that some time after this talk defendant came to his office with the plans of the drain in question, and suggested that they look them over and go in together in bidding on, and if successful, constructing some of the sections of the drain, and that he accepted the proposition. His testimony establishes the partnership agreement. In this he is supported by the testimony of his wife and bookkeeper. Defendant's version is as follows:

"That evening we went—I went into James O'Sullivan & Sons Company office, and as I remember it, in the outer office Mrs. O'Sullivan and her daughter, Kathleen, and Miss Morgan were there, and I passed the time of day with them and inquired of them where Jim was, and they told me he was in the private office, and I went in and I said to Jim, I said, 'I have got a set of plans of a sewer in Macomb county' and at that we spread the plans on the table and looked them over and sort of got the thing arranged in our minds what it was all about, different sections; we talked, I remember, about the depth of the sewer and then we talked about the possibilities of this kind of work, and I said to Jim, I said, 'Well, what do you say we go together and figure this job, figure it over.' He said, 'All right.' "

The parties did figure together. There were six sections of the drain. Sections A and B involved large contracts. Section E was a small one. Plaintiff claims it was finally agreed that they should bid on B and E, and bids were accordingly prepared, the bid on B being signed by defendant and the one on E by plaintiff. Each furnished the necessary certified check to accompany the bid. The bid on E was too high; that on B was low, and on May 20, 1926, the contract was awarded defendant to construct B at the

price of $285,628.50.    A few days after this plaintiff failed to meet defendant at a Detroit hotel, due, as he claims, to his machine getting stuck in the mud on his way there.    They had some words over this incident.    Defendant claims that any tentative arrangement for a partnership they had then came to an end.    Plaintiff denies this.    A few days later they received a telegram announcing the death of a sister in California and were much together in the succeeding days arranging for the funeral.    We are satisfied they also discussed and arranged for work on the contract.

We are satisfied that defendant devoted more time to the job than did the plaintiff; he also financed it. Plaintiff claims that in recognition of this the contract was modified so that plaintiff was to have a third interest and defendant two-thirds.    But we are not satisfied that plaintiff gave the job as little attention as some of defendant's employees, who were witnesses, claim.    Indeed, if we accept the testimony of some of these employees at par, each of them was solely responsible for the success of the enterprise and plaintiff assisted in no way.    The testimony of disinterested witnesses, those who were not at the time associated with either of the parties, preponderates in favor of the plaintiff.    One disinterested witness who wanted to furnish the cement testifies that plaintiff told him "he had nothing to do with that work, and I would have to see Alf. in regard to the cement," and two testified that defendant told them plaintiff was in partnership with him.    Due allowance usually must be made for the conflict which arises in the testimony of different witnesses.    Plaintiff's testimony and that of his witnesses conflicts with defendant's testimony and that of his witnesses.    The testimony of defendant's witnesses is, however, quite largely negative.    Plaintiff was not on the job all the time, but his testimony showing an intimate knowledge of

the difficulties which arose from time to time and the manner of their solution is quite satisfying that he was on the job when needed, when there were problems to solve, and aided his brother in their solution.

Defendant somewhat grudgingly admits that plaintiff performed services in connection with the obtaining and execution of the contract. He admits they were of value. He does not seriously controvert the claim that plaintiff has something coming from him, but insists that he should fix the amount and that it should not be measured on the theory that a partnership existed.

There are no questions of law involved. The case presents only questions of fact. The record is voluminous, the briefs very full. In 55 pages of brief plaintiff's counsel marshal the facts sustaining their client's claim. In 66 pages of brief defendant's counsel perform a like duty for their client. Patently we can not within the reasonable compass of an opinion review all or any considerable portion of the detail of these claims. Nor would it profit the parties or the profession so to do. They have received full attention at our hands and each has been weighed and measured against the other. We have read the record with care. From a consideration of everything before us, we reach the conclusion that there was a partnership between these brothers and that plaintiff is entitled to an accounting.

The decree will be affirmed with costs of this court.

NORTH, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.